UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRACY GEORGE<br><br>       Plaintiff,<br><br>  v.<br><br>FIRST AMERICAN TITLE INSURANCE<br>COMPANY,<br><br>       Defendant. | Case No. 23-cv-3504 (JMC) |

## MEMORANDUM OPINION

In March 2020, Plaintiff Tracy George lent $265,000 to Allen Martin Ventures, LLC to purchase at foreclosure and renovate a property at 3903 Burns Court SE, Washington, DC 20019. *George v. Allen Martin Ventures, LLC*, No. 21-cv-2876 (RJL), 2024 WL 4198711, at *1 (D.D.C. Sept. 16, 2024). Neither Allen Martin Ventures nor its members ever paid her back. *Id*. In a prior case in this district, George sued Allen Martin Ventures and its members for breach of the loan agreement. She also sued First Class Title (FCT), the title agent in the transaction, for breach of fiduciary obligations and negligence. *George v. Allen Martin Ventures, LLC*, No. 21-cv-2876 (RJL), ECF 1 ¶¶ 46–54. Among other claims, Plaintiff alleged in that suit that FCT failed to "ensure the payoff of" two pre-existing mortgages on the property prior to settlement. *Id.* ¶ 48, 53.

Plaintiff now sues Defendant First American, a title insurer who issued her policy through FCT. She seeks to hold Defendant liable for FCT's failure to pay off two pre-existing mortgages on the property prior to settlement. In this suit, Plaintiff alleges that Defendant fraudulently concealed material facts and was negligent when it (1) excluded those prior mortgages from coverage under her title insurance policy, (2) failed to send her a title insurance commitment detailing those exceptions before issuing the policy, and (3) neglected to inform her that the

property remained occupied by the prior mortgage-holder. She seeks compensatory damages for the loss of the loan she made to Allen Martin Ventures. But Plaintiff has failed to show that she relied on any omissions or representations that Defendant made when she entered the loan with Allen Martin Ventures. As a result, Plaintiff has failed to plead sufficient facts to support her fraud claim because she cannot show that she relied on Defendant's actions to her detriment. Additionally, Plaintiff's negligence claim is barred by the pure economic loss doctrine under tort law. As such, the Court will **GRANT** First American's motion to dismiss.[1]

## I.     BACKGROUND

In February 2020, Plaintiff first agreed to lend $265,000 to Allen Martin Ventures to purchase and renovate a residential property. ECF 1 ¶ 5. Allen Martin Ventures' managing member, Robin Martin, entered into an agreement with Plaintiff on March 12, 2020, in which Martin personally guaranteed this loan. *See id*. ¶ 6. Plaintiff refers to this first part of the loan agreement as the "Note Guarantee." *Id.*

Plaintiff alleges that on March 2, 2020, Martin contacted an employee of FCT, informing them of Plaintiff's loan. Martin is alleged to have told FCT that Plaintiff's loan would have a first lien loan priority on the property and that two pre-existing mortgages on the property were to be paid off at settlement. *Id*. ¶ 7. On March 10, the FCT employee emailed a local real estate lawyer, stating, "The buyer would like to payoff the loans against the property. Would you have any information that could help us obtain those payoff statements for the 1st and 2nd mortgage?" ECF 1 ¶ 8; ECF 1-3 at 2. The attorney responded that he was "not sure" if his firm could help because, although the "original loans are public record," the identity of the current servicers of those loans

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

was unknown. ECF 1-3 at 1. On March 16, FCT's president reached out to the real estate lawyer to again ask for information about paying off the two mortgages. ECF 1 ¶ 9; ECF 1-4 at 1–2. The lawyer reiterated that he was not sure if he could provide any help, noting that the identity of the current loan servicers was unknown. The lawyer then asks FCT's president, "I understood that closing was preliminarily scheduled for tomorrow. Is that still the case?" ECF 1-4 at 1. Without resolving the issue of the prior mortgages on the property, Allen Martin Ventures and FCT proceeded with executing a promissory note on March 17, 2020. ECF 1-7 at 8; ECF 1 ¶ 18. The note, that Plaintiff refers to as the "Promissory Note," provided that Plaintiff would lend $265,000 to Allen Martin Ventures. ECF 1-7 at 1. Together, the Promissory Note and the Note Guarantee form the terms of the loan that Plaintiff extended to Allen Martin Ventures and Robin Martin for the purchase and renovation of the property.

On that same day, March 17, Allen Martin Ventures and FCT executed an owner's title insurance policy, which covered Allen Martin Venture's interest as the buyer of the property. ECF 1 ¶ 16; ECF 1-6 at 1. A title insurance policy is "a contract insuring or indemnifying" property owners against losses arising from conditions including "[d]efects in, or liens or encumbrances on, the insured title." D.C. Code § 31-5031.01(24); *id.* § 31-5041.01(18). On that same day or the next day, FCT issued Plaintiff a separate policy of title insurance that covered her exposure as a lender for the property. ECF 1 ¶ 19; ECF 1-5 at 7. The lender's title insurance policy, underwritten by Defendant First American, excepted from its coverage two prior mortgages that were held on the property. ECF 1-5 at 11. Plaintiff alleges she was never given the lender's title insurance policy in full but was instead sent a redacted version that omitted the relevant exceptions. ECF 1 ¶ 19–21.

Prior to issuing a title insurance policy, companies often issue a title insurance commitment—in essence, a preliminary report that contains the key "terms, conditions, [and]

exceptions . . . under which the title insurer is willing to issue its title insurance policy." D.C. Code § 31-5031.01(23); *id.* § 31-5041.01(17). Plaintiff alleges that Defendant "failed to send Plaintiff a copy of the title insurance commitment (although it was subsequently determined that Defendant had issued such a commitment) prior to settlement."[2] ECF 1 ¶ 15. In short, Plaintiff alleges that she was never informed through a title insurance commitment or the full policy that the prior mortgages on the property had not been paid off and were listed as exceptions to the policy's coverage. She alleges that she only became aware of these exceptions from coverage in November 2021, when FCT sent Plaintiff's counsel a full copy of the lender's title insurance policy. *Id.* ¶ 24. Plaintiff then filed this suit on November 21, 2023. *Id.* at 13.

## II.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must "treat the complaint's factual allegations as true" and afford the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000). That said, the Court "need not accept inferences drawn by plaintiff if those inferences are not supported by the facts set out in the complaint, nor must the [C]ourt accept legal conclusions cast as factual allegations." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012). The ultimate question is whether the complaint "pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In making that determination, the Court relies on the complaint itself,

---

[2] Defendant provided a copy of the title insurance commitment, which was executed on January 18, 2020, as an exhibit along with its reply in support of its motion to dismiss. ECF 14-1. Plaintiff's complaint acknowledges the existence of the commitment, so the Court finds that it can consider the document. *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (Courts can consider the "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss."). But the Court will take the facts in the complaint as true and assume that Defendant never sent this commitment to Plaintiff prior to settlement as Plaintiff alleges.

which may include "documents attached as exhibits or incorporated by reference in the complaint." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011).

Claims of fraud and mistake are held to a higher pleading standard. Under Federal Rule of Civil Procedure 9(b), "when a plaintiff alleges fraud or negligent misrepresentation . . . the complaint must state with particularity the circumstances constituting the fraud or mistake," meaning the plaintiff must "state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." *Boomer Dev., LLC v. Nat'l Ass'n of Home Builders of the U.S.*, 258 F. Supp. 3d 1, 12 (D.D.C. 2017). Rule 9(b) does not abrogate the general pleading standard of Rule 8, but "simply requires the pleader to provide a higher degree of notice" regarding the alleged fraud. *Anderson v. USAA Cas. Ins. Co.*, 221 F.R.D. 250, 253 (D.D.C. 2004). And while the complaint must allege "the 'who, what, when, where, and how' with respect to the circumstances of the fraud," *id.*, the speaker's "malice, intent, knowledge, and other conditions of [their] mind may be alleged generally," Fed. R. Civ. P. 9(b).

## III.    ANALYSIS

Plaintiff brings two counts in her complaint. First, in her fraudulent concealment claim, she alleges that Defendant failed to disclose to her that "its agent, FCT, failed to arrange for the payoff at settlement of the two pre-existing mortgage loans on the Property" and that Defendant did not inform her that the lender's title insurance policy "include[d] exceptions for th[o]se two pre-existing loans." ECF 1 ¶ 31. Second, Plaintiff brings a negligence claim, alleging that Defendant "breached its duty of care and disclosure" to Plaintiff by "not disclosing" that the two existing loans had not been paid off and that the insurance issued contained exceptions for those loans. *Id.* ¶¶ 48, 50. Under the second count, Plaintiff also alleges that Defendant was negligent by failing to notify her that the prior foreclosed owner continued to occupy the property. *Id.* ¶ 51.

Plaintiff alleges that, had Defendant informed her of these issues, she would have "cancel[led]" or not made the loan. *Id*. ¶¶ 39, 52. As a result, she sues Defendant for the loss of the principal amount of the loan, interest on the loan, costs in seeking this recovery, and punitive damages. *Id*. at 12–13. The Court notes at the outset that there is a mismatch between the damages Plaintiff seeks and the facts she alleges, which dooms her suit. Plaintiff does not seek to be compensated for harms that relate to a breach of the title insurance policy. She does not plead damages related to the existence of the two pre-existing mortgages or based on the related exceptions in the title insurance policy. Instead, Plaintiff sues Defendant for the principal amount of the loan, continuing interest, and other related costs. *Id*. So, Plaintiff must sufficiently allege facts that demonstrate that Defendant's actions caused her to *issue the loan*, which she has not done. Her fraud claim fails because her allegations do not establish that she detrimentally relied on any of Defendant's representations or omissions prior to making the loan. Separately, her negligence claim is barred by the pure economic loss doctrine. The Court thus grants Defendant's motion to dismiss on both counts.

### A. Fraudulent Concealment

"Under District of Columbia law, the elements of a claim of fraudulent concealment are (1) a duty on behalf of the defendant to disclose to the plaintiff a material fact; (2) the failure to disclose that fact; (3) an intention to defraud or deceive the plaintiff; (4) action taken by the plaintiff in justifiable reliance on the concealment; and (5) damages as a result of the defendant's concealment." *Howard Univ. v. Watkin*s, 857 F. Supp. 2d 67, 75 (D.D.C. 2012). Similarly, the elements of common law fraud are "(1) a false representation or willful omission in reference to a material fact, (2) made with knowledge of its falsity, and (3) with intent to induce the party to rely on the representation or omission, where (4) the party relies upon the representation or omission

(5) to its detriment." *Doe v. Roman Catholic Diocese of Greensburg*, 581 F. Supp. 3d 176, 204 (D.D.C. 2022). Plaintiff fails to plead any facts demonstrating that she relied on Defendant's omissions to her detriment. Specifically, her allegations fail to show (1) that Defendant had any duty to speak to her prior to entering a contractual relationship with her or (2) that her reliance on Defendant's silence caused the harm that she seeks to be compensated for.

First, Plaintiff has not shown that Defendant had any duty to speak to her prior to entering a contractual relationship with her as a title insurer. Plaintiff's fraud claim begins with allegations of two omissions by Defendant: (1) failure to inform her that FCT had not paid off the two pre-existing mortgages and (2) failure to inform her that those mortgages were included as exceptions to her lender's title insurance policy, including by not sending her a title insurance commitment notifying her of the exceptions. But as another court in this district has observed:

> There is, of course, no question that mere silence does not constitute fraud unless there is a duty to speak. Such a duty can arise from a confidential, fiduciary, or special relationship between a plaintiff and defendant that justifies the imposition of the duty. Alternatively, it can arise from a situation where a material fact is unobservable or undiscoverable by an ordinarily prudent person upon reasonable inspection.

*Greensburg*, 581 F. Supp. 3d at 204–05. Plaintiff has not established that any relationship she had with Defendant arose before the settlement of the property transaction. As alleged in her complaint, the Parties only entered a contractual relationship *after* settlement. ECF 1 ¶ 13 (noting the lender's title insurance policy was "issued by Defendant on or after settlement of the sale of the Property"). Plaintiff alleges that she was harmed because Defendant issued the wrong title insurance policy—one that contained two exceptions that she did not ask for. But she could not have relied on that policy to her detriment when she made the loan *prior* to entering into that policy. *Himmelstein v. Comcast of the Dist., LLC*, 908 F. Supp. 2d 49, 60 (D.D.C. 2012) (finding that a plaintiff could not

satisfy the detrimental reliance element of fraud if he "does not allege that he took any action—or refrained from taking any—in reliance on [defendant's] representations").

Plaintiff nonetheless argues that Defendant had to affirmatively discuss the pre-existing mortgages with her for two reasons. First, she contends that D.C. law imposes a duty upon title insurers to provide a title insurance commitment prior to closing and that Defendant failed to do so. Second, Plaintiff alleges that she had communications with FCT prior to settlement, that FCT therefore had a duty to disclose the two pre-existing mortgages, and that Defendant is liable for FCT's actions, whom she alleges is Defendant's agent. ECF 1 ¶ 19 (alleging that she had instructed FCT, "Defendant's agent," to pay off the two pre-existing mortgages at settlement).

First, Plaintiff's statutory argument fails because the provision of the D.C. Code she relies on in her complaint, section § 31-5041.05(a), does not apply to her policy. D.C Code § 31-5041.05(a) requires disclosure of exceptions in a title insurance policy "if a title insurance commitment is issued before issuing an *owner[']s* title insurance policy." (emphasis added). Plaintiff's claims are based on a *lender's* title insurance policy, which is instead governed by section 31-5041.05(b). That provision requires certain types of notice but only for a lender's title insurance policy issued "in conjunction with a mortgage loan made simultaneously with the purchase of . . . an owner-occupied property . . . where no owner's title insurance policy has been requested." D.C. Code § 31-5041.05(b). This provision is clearly inapplicable because Plaintiff has not alleged that the property at issue was to be owner-occupied. Additionally, Allen Martin Ventures received an owner's title insurance policy on the property, which was attached as an exhibit to the complaint. ECF 1-6. Plaintiff thus fails to show that Defendant had a statutory duty to send her a title insurance commitment prior to closing.

Turning to Plaintiff's second argument, the Court does not have to decide whether FCT owed Plaintiff any confidential or fiduciary duties before any contractual relationship arose between them. Even if FCT had an obligation to speak prior to settlement, Defendant is not liable for that obligation. In deciding the scope of title insurers' liability for their local agents, courts have traditionally "applied the common law of agency." 2 Joyce Palomar, Title Ins. Law § 20:21 (2025 ed.). As a result, Defendant would be liable for FCT's actions if FCT "was acting within the course and scope of its actual or apparent authority as [Defendant's] agent." *Id*. The Parties in this case have not filed any agency agreement that may exist between FCT and Defendant. But Plaintiff's complaint refers to the title insurance commitment at issue in this case. ECF 1 ¶ 15 (Plaintiff's complaint noting that "it was subsequently determined that Defendant had issued" a title insurance commitment); *Ward*, 768 F. Supp. 2d at 119 (allowing courts to rely on "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss").

The title insurance commitment includes a provision specifying that FCT is First American's agent "only for the limited purpose of issuing title insurance commitments and policies. [FCT] is not [First American's] agent for the purpose of providing closing or settlement services." ECF 14-1 at 4. This provision is fatal to Plaintiff's claim because she has not alleged that FCT engaged in any actions related to issuing title insurance commitments or policies prior to settlement. She alleges that FCT failed to provide any title insurance commitment to her and acknowledges that FCT did not issue her lender's title insurance policy until after settlement. ECF 1 ¶ 15–16. Her claims against FCT, then, rely on FCT's actions and communications leading up

to settlement, including FCT's failure to pay off the prior mortgages as she instructed. *Id*. ¶ 7–10. Such actions are explicitly outside the scope of FCT's agency relationship with Defendant.[3]

But even if Defendant is liable for FCT's conduct, Plaintiff's allegations do not lead to any reasonable inference that she detrimentally relied on FCT's actions in extending the loan in the first place. Plaintiff makes the conclusory allegation that if Defendant or FCT had affirmatively disclosed the issue with the pre-existing mortgages in advance of settlement, she would have "cancell[ed] settlement and terminat[ed] the Loan." ECF 1 ¶¶ 16, 39 ("Plaintiff made a Loan she would not have made if these material facts had been disclosed."). But Plaintiff's facts, as pled, demonstrate that she agreed to extend the loan *before* hearing back from FCT on any resolution of the prior mortgages. According to her complaint, as of March 16, 2025, FCT was still emailing a local real estate lawyer asking about the possibility of paying off the two prior mortgages. *Id*. ¶ 9. But on March 12, 2020, Plaintiff had already emailed Martin upon receipt of the executed Note Guarantee and stated, "I will move forward with getting docs executed and $'s wired. Please notify the title company that the total amount will be received no later than Tues [March 17, 2020]." ECF 1-2 at 1. She asked who she should wire the money to and noted that any delay in the funds being transferred (from March 12 to March 17) would only be due to COVID-19-related bank delays. *Id*. At this point in time, and based upon her own allegations, Plaintiff had never seen a title insurance commitment or policy from FCT or Defendant, nor received confirmation about the payoff of the two prior mortgages. She nonetheless agreed to proceed with the deal and wire the money. Plaintiff cannot allege that she detrimentally relied on their silence when she did not even

---

[3] The Court notes that industry practice, if considered, would likely confirm that FCT only acts as Defendant's agent in limited circumstances that do not include real estate settlements and closings. The title insurance industry's general practice is to "require[] an additional document—a closing protection letter—before title insurance companies can be liable for the actions of their independent title insurance agents when those agents are conducting closings." *Bergin Fin., Inc. v. First Am. Title Co.*, 397 Fed. Appx. 119, 125 (6th Cir. 2010).

wait to hear back from them before moving forward with the loan. *See Busby v. Capitol One, N.A.*, 772 F. Supp. 2d 268, 277 (D.D.C. 2011) (dismissing plaintiff's fraud claim because the payments at issue "were made before the defendants' alleged misrepresentations and plainly were not taken in reliance on them"). Finally, Plaintiff argues that Defendant sent her a redacted copy of the policy to purposefully conceal the pre-existing mortgage exceptions. Even taking these allegations as true and construing them in Plaintiff's favor, they still focus on actions that Defendant took *after* settlement and *after* she executed the loan. As such, Plaintiff's first claim fails because she does not sufficiently allege facts to support the element of detrimental reliance.[4]

## B. Negligence

Plaintiff's negligence claim also fails. Under D.C. tort law, the economic loss doctrine "bars recovery of purely economic losses in negligence, subject to only one limited exception where a special relationship exists." *Aguilar v. RP MRP Wash. Harbor, LLC*, 98 A.3d 979, 985–86. Plaintiff here alleges solely economic losses based on the loan and interest payments. ECF 1 ¶ 54 (seeking damages due to "the loss of the principal amount of the Loan to purchase the Property plus all interest on that Loan"). As discussed above, she fails to identify any special relationship with Defendant that would impose tort duties upon Defendant, such as affirmative duties of care or disclosure. *See supra* Section III.A (discussing Plaintiff's failure to allege that Defendant had a

---

[4] The Court separately notes that Plaintiff may also fail to satisfy the requisite element of due diligence necessary to plead a fraudulent concealment claim. Plaintiff alleges that, until FCT's counsel sent her a copy of the policy in November 2021, she was completely unaware that FCT and Defendant had ignored her instructions to pay off the two existing mortgage loans at settlement. ECF 1 ¶ 24. But Plaintiff has not alleged that she could not have uncovered these facts through due diligence. *See Larson v. Northrop Corp.*, 21 F.3d 1164, 1173 (D.C. Cir. 1994) ("[A] plaintiff must plead with particularity the facts giving rise to the fraudulent concealment claim and must establish that they used due diligence in trying to uncover the facts."); *Firestone v. Firestone*, 76 F.3d 1205, 1211 (D.C. Cir. 1996) (same). For example, her complaint does not include any allegations that she reached out to FCT, Defendant, or Allen Martin Ventures to inquire about or confirm whether the pre-existing mortgages had been paid off. Without even alleging that she made such a basic inquiry, she has likely not demonstrated fraudulent concealment. *See Krukas v. AARP, Inc.*, 376 F. Supp. 3d 1, 46–47 (D.D.C. 2019) ("[F]ailure to perform . . . basic due diligence precludes a fraud claim.").

duty to speak prior to their entry into a contractual relationship); *cf. Whitt v. Am. Prop. Constr.*, 157 A.3d 196, 205 (D.C. 2017) (allowing plaintiffs to recover if they had a "special relationship" with the defendant). The Court thus applies the well-settled rule in this district that a plaintiff cannot recover for solely economic losses under tort law. Courts in this district have held, in line with other jurisdictions, that there is no "authorized tort recovery for purely economic losses in a contract setting." *Furash & Co., Inc. v. McClave*, 130 F. Supp. 2d 48, 56 (D.D.C. 2001); *RLI Ins. Co. v. Pohl, Inc. of Am.*, 468 F. Supp. 2d 91, 94 (D.D.C. 2006) (collecting sources). Courts have adopted such a rule because a "chain reaction occurs when economic harm is done and may produce an unending sequence of financial effects best dealt with by insurance, or by contract, or by other business planning devices," as opposed to tort liability. *Furash*, 130 F. Supp. 2d at 57; *Whitt*, 157 A.3d at 205 ("[W]here pure economic loss is at issue, not connected with any injury to one's body or property, the reach of legal liability is quite limited.").[5] As a result, Plaintiff cannot recover on her tort claim.

*     *     *

For the foregoing reasons, Defendant's motion to dismiss, ECF 7, is **GRANTED**, and as a result this case is **DISMISSED.** A separate order accompanies this memorandum opinion.

      **SO ORDERED.**

                                        _____
                                        JIA M. COBB
                                        United States District Judge

Date: September 29, 2025

---

[5] The Court does not decide whether an independent duty of care is created after Plaintiff and Defendant entered the contractual relationship under the lender's title insurance policy. Instead, the Court merely holds that, prior to settlement and prior to the issuance of the policy, Plaintiff has not alleged any basis for a special relationship. But even if Defendant and Plaintiff were in a relationship as insured and insurer, that may not suffice to create a special relationship under D.C. law. *See Attias v. CareFirst, Inc.*, 365 F. Supp. 3d. 1, 23 (D.D.C. 2019) ("District of Columbia law does not consider the relationship between insurer and insured a fiduciary relationship as a matter of law" and instead considers it to be "contractual in nature.").